E. GRADY JOLLY, Circuit Judge,
dissenting.
I respectfully dissent because I sense that something strange may be going on here and there has been no discovery. When the broker is getting 90% of the profit on a transaction, it is not unreasonable to think that perhaps the lender is somehow being benefitted; perhaps it is, in effect, receiving a usurious rate of interest from whatever arrangement it has with the broker. Perhaps the broker is paying a flat sum to the lender, or a percentage of its seemingly excessive nominal fee; this may amount to usury under the facts of this case, or it may suggest a conspiracy to commit usury. Or perhaps nothing untoward is going on. It may even be probable that this is a completely legal and legitimate operation.
Now, I do not disagree with the majority’s scholarly analysis of Texas usury law and how it is affected by the CSOA, but it does seem that Loviek stated a litigable claim here. Loviek makes the following factual allegations in her Second Amended Complaint, which, at this stage of the case, we must assume are true:
1) CPCWA handled all the usual tasks of the lender: arrangement of advertising, credit review, collateral inspection, approval decision, paperwork preparation, issuance and cashing of checks, collecting payment, deciding when to repossess;
2) Ritemoney shifted all, or substantially all, of its overhead expenses, thereby disguising extra interest;
3) CPCWA acted as an agent of or joint participant with Ritemoney, as evidenced by its brokering all its title loans to this particular lender, and Ritemoney’s making all its title loans through CPCWA;
4) Ritemoney required that all loans be negotiated by CPCWA and knew that the payment of the broker fee was a prerequisite for a loan;
5) Ritemoney entrusted the entire management of its title loan business to CPCWA, and CPCWA was Ritemoney’s agent rather than the borrowers’ agent;
*445 6) The Promissory Note discloses the interest rate for TILA purposes to be 131.019%, but that, “for state law purposes,” the “loan brokerage or other credit services” fee is being financed by the Note, while the interest rate is 10%.
In other words, Loviek alleges that CPCWA was doing more than serving as a mere arranger of loans, because it served as the lender’s agent, and thus the 75% broker’s fee was not for a separate service. Consequently, she alleges that the actual interest rate was usurious.
In short, Loviek has, in my opinion, pled enough facts to permit discovery and to allow the case to proceed at least to the summary judgment stage.
For the foregoing reasons, I would vacate the district court’s judgment and remand for further proceedings and, for that reason, I respectfully dissent.